IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Bryan Ladner, #306663 | ) | C/A No. 5:13-2811-JMC-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| | ) | |
| John R. Pate, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner Bryan Ladner ("Petitioner") is a state prisoner who filed this pro se petition for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the court pursuant to

28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and

Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 34, 35.

On July 29, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court

advised Petitioner of the Summary Judgment Motion, dismissal procedures, and the possible

consequences if he failed to respond adequately to Respondent's Motion. ECF No. 36.  On

October 2, 2014, Petitioner filed a Response in Opposition to Respondent's Motion for Summary

Judgment after receiving a 30-day filing extension. ECF No. 33. Having carefully considered the

parties' submissions and the record in this case, the undersigned recommends that Respondent's

Motion for Summary Judgment, ECF No. 35, be granted.

I.    Background

Petitioner is currently incarcerated in the South Carolina Department of Corrections

("SCDC").  ECF No. 1 at 1.  In 2004, Petitioner was indicted at the January term of the Berkeley

County Grand Jury for first-degree Criminal Sexual Conduct ("CSC") with a Minor (2004-GS-08-0015). App. 736.[1]  Public Defenders Patricia A. Kennedy and Keshia V. White represented Petitioner in a jury trial that convened from December 13-16, 2004, and Assistant Solicitor Kristi Lea Harrington represented the State. App. 3. Petitioner was tried before the Honorable Daniel F. Pieper. *Id.* After the trial, the jury found Petitioner guilty as indicted, and Judge Pieper sentenced Petitioner to fourteen years imprisonment for the conviction. App. 737.

Assistant Appellate Defender Aileen P. Clare represented Petitioner on direct appeal. ECF No. 34-1. In his appellate brief, Petitioner raised the following issues:

1. Did the trial court abuse its discretion and violate appellant's confrontation and due-process rights by admitting into evidence the hearsay accusation of the two-year-old alleged victim who was incompetent to testify?
   a. Was the statement testimonial in nature, and therefore inadmissible under *Crawford v. Washington*, because appellant had no prior opportunity for cross-examination?
   b. Was the statement inadmissible, even if not testimonial under *Crawford v. Washington*, because it was not an excited utterance and because the witness' demonstrable mental incoherence made it unreliable in any event?
2. Did the lower court err by denying appellant's motion for a directed verdict?

*Id.* at 5. Assistant Attorney General Shawn L. Reeves filed a brief on behalf of the State. ECF No. 34-2.  The South Carolina Supreme Court affirmed Petitioner's conviction and sentence in a published opinion filed April 23, 2007. ECF No. 34-3. There, the court found the admission of victim's hearsay statement did not violate *Crawford* because it was a nontestimonial statement. *Id.* at 11. Additionally, the supreme court found that "it was well within the trial court discretion to admit the victim's statements under the excited utterance exception to the hearsay rule." *Id.* at

---

[1] Citations to "App." refer to the Appendix for Petitioner's trial transcript, appeal from his sentence and conviction, and his claim for collateral relief in the state courts of South Carolina. That appendix is available at ECF Nos. 34-8, 34-9, 34-10, 34-11, and 34-12 in this habeas matter.

16. Finally, the supreme court found the trial court correctly denied Petitioner's directed verdict motion. *Id.* at 16-17. On May 9, 2007, the South Carolina Supreme Court issued a Remittitur. ECF No. 34-4.

II.    Procedural History

Petitioner filed an application for Post-Conviction Relief ("PCR") on February 26, 2008 (2008-CP-08-602). App. 808-815. Petitioner asserted the following allegations, recited verbatim, regarding his claims:

a) Ineffective assistance of trial counsel-6th Amendment- counsel failed to effectively prepare for my trial and represent me at trial.
b) Ineffective assistance of appellate counsel-14th Amendment-Appellate counsel failed adequately perfect my appeal and be prepared for and present cognizable arguments to the Court of Appeals during oral arguments.
c) Violation of Brady v. Maryland-14th Amendment-The State failed to disclose the statements of two witnesses. These statements were material and exculpatory.
d) Violation of Due process under the 6th and 14th Amendments.
e) The sentence is illegal under Blakely v. Washington where it involves a statutory scheme that exposes the Petitioner to a potentially enhanced incarcerative sentence that was not decided by a jury nor waived by Applicant.

App. 810-11. Matthew Friedman filed a Return on behalf of the State. App. 816-822. A PCR hearing convened on January 24, 2011, before the Honorable Roger M. Young. App. 823-874. Petitioner was present and represented by Charles T. Brooks, Esq., and Matthew J. Friedman, Esq., appeared on behalf of the State. *Id.* During the hearing, Petitioner maintained his trial counsel was ineffective in that counsel:

a) Failed to effectively prepare for trial and represent Applicant at trial.
b) Failed to object to hearsay testimony of the victim that came in under excited utterance.
c) Failed to raise evidence of victim's habit of saying one thing then saying the opposite.

d) Failed to raise the timeline of events in that Applicant only had a five-minute window to commit the crime.

e) Failed to have a medical expert to compare victim's injuries with Applicant's written statements to expose discrepancies.

f) Stipulated that there was no semen or hair found where the SLED report indicated that there was a hair found that did not belong to Applicant.

g) Failed to object to victim's competency.

h) Failed to object to prosecutor's decision to call for competency hearing.

i) Failed to object to Dr. Staples' hearsay statement.

j) Allowed chaplain for Berkeley County to serve as a juror.

k) Did not call Applicant to testify at Jackson v. Denno hearing.

App. 876 (PCR court's Order of Dismissal finding that Petitioner presented these ineffective assistance claims to the court for review). In an Order filed March 3, 2011, the PCR court denied Petitioner's PCR Application in full, making the following findings of fact and conclusions of law:

> This Court has had the opportunity to review the record in its entirety and has heard the testimony and arguments presented at the PCR hearing. This Court has further had the opportunity to observe each witness who testified at the hearing, and to closely pass upon his or her credibility. This Court has weighed the testimony accordingly. Set forth below are the relevant findings of fact and conclusions of law as required by S.C. Code Ann. § 17-27-80 (2003).

> Applicant testified that counsel failed to object to hearsay when the victim's statement was admitted as an excited utterance. He contended that it was not an excited utterance because it was not made at the time of the incident. Applicant testified that counsel never touched on the fact that the victim had a habit of saying one thing and then saying the opposite. He asserted that counsel did not address the timeline of events, specifically that the Applicant could not have caused this much damage to the victim within a five-minute window of time. Applicant testified that two other people-Ronnie Atkins and Mary Jackson-were at the house that night and gave statements. He also contended that [redaction] was trick or treating alone with the victim earlier in the night. Applicant asserted that counsel was ineffective for stipulating that no semen or hair was found where the SLED report indicated that there was a hair found, that did not belong to Applicant.

> Applicant testified that counsel failed to object to the victim's competency and to the prosecutor's decision to call for a competency hearing. He asserted that counsel was ineffective for failing to call him as a witness at the Jackson v. Denno

4

hearing. He also testified that counsel failed to object to hearsay testimony from Dr. Staples in the emergency room when he testified that the victim named Applicant as the person who touched her. Applicant contended that counsel was ineffective for failing to retain a medical expert to compare the victim's injuries with Applicant's written statement to expose discrepancies. Finally, Applicant testified that counsel was ineffective for allowing the chaplain for Berkeley County to serve as a juror.

Joanna Sweatman, Applicant's fiancée, testified that the victim had a habit of saying one thing then saying the opposite. She testified that she told counsel about this fact.

Trial counsel testified that she did not discuss the victim's habit of saying something and then saying the opposite because the more important issues were that the victim was only with Applicant for five minutes, the victim was dressed in a dress and tights and a pull-up, the tights were still intact with no holes after she was with Applicant, and victim was seated in the back seat while Applicant drove. She asserted that the doctor could not tell if the victim's injuries were caused by object or penile penetration. She contended that the victim did not have any injuries the preceding day. She testified that five or six other people had more access to the victim than Applicant in the 24-36 hour period before the injuries were discovered, including [Redaction] and [Minor]. Counsel testified that Minor was unavailable for subpoena during trial because he was in Tennessee. She did not recall seeing statements from Ronnie Atkins or Mary Jackson. Counsel testified that she should have objected to the victim being "paraded" in the courtroom in a dress during the trial, although she admitted that there was no reason that the victim should not be allowed to attend the trial.

Counsel testified that the presence of a hair in the SLED report was not important because of the nature of the injuries. She contended that she made a mistake in failing to call Applicant during the Jackson v. Denno hearing. She asserted that she thought there was a valid Crawford issue, although the appellate court disagreed with her. With respect to the juror who was a chaplain for Berkeley County, Counsel testified that the court asked him if he could be fair and impartial.

### Ineffective Assistance of Counsel

Applicant alleges that he received ineffective assistance of counsel. In a post-conviction relief action, the applicant has the burden of proving the allegations in the application. Rule 71.1(e), SCRCP; Butler v. State, 286 S.C. 441, 334 S.E.2d 813 (1985). Where ineffective assistance of counsel is alleged as a ground for relief, the applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just-result." Strickland v. Washington, 466 U.S. 668 (1984); Butler, 334 S.E.2d 813.

The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. The courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S. 668. The applicant must overcome this presumption in order to receive relief. Cherry, 386 S.E.2d 624.

Courts use a two-pronged test to evaluate allegations of ineffective assistance of counsel. First, the applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Id. at 625 (citing Strickland, 466 U.S. 668). Second, counsel's deficient performance must have prejudiced the applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different." Id. at 625. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. Johnson v. State, 325 S.C. 182, 480 S.E.2d 733 (1997).

This Court finds that counsel is a trial practitioner who has extensive experience in the trial of serious offenses. Counsel conferred with the Applicant on numerous occasions. During conferences with the Applicant, counsel discussed the pending charges, the elements of the charges and what the State was required to prove, Applicant's version of the facts, Applicant's constitutional rights, the possible punishments, and possible defenses or lack thereof.

Regarding the Applicant's claims of ineffective assistance of counsel, this Court finds the Applicant has failed to meet his burden of proof. This Court finds that Applicant's attorney demonstrated the normal degree of skill, knowledge, professional judgment, and representation that are expected of an attorney who practices criminal law in South Carolina. State v. Pendergrass, 270 S.C. 1, 239 S.E.2d 750 (1977); Strickland, 466 U.S. at 668; Butler, 286 S.C. 441, 334 S.E.2d 813. This Court further finds counsel adequately conferred with the Applicant, conducted a proper investigation, adequately prepared for trial, and was thoroughly competent in her representation. This Court finds that counsel's representation did not fall below an objective standard of reasonableness.

This Court finds that the excited utterance issue was properly preserved for appeal and ruled upon on appeal. The Court of Appeals found that the trial court did not abuse its discretion by admitting the victim's statement as an excited utterance. The Court of Appeals also found that the incompetence of a declarant at the time of trial does not preclude the admission of that declarant's excited utterance through a different competent witness.

This Court finds that the issue of the victim's competency was adequately raised at trial. The trial court found that the victim was incompetent, but, as stated above, nonetheless properly admitted her excited utterance.

This Court finds that counsel was not deficient for failing to address the victim's habit of saying one thing and then saying the opposite. Counsel testified that she was more concerned with other issues at trial, specifically the limited time Applicant was with the victim, the clothing that victim was wearing, and the position in which the victim was seated in the car, all of which she claimed would have made it difficult for Applicant to commit the crime. This Court finds that counsel properly raised the timeline issue at trial. The jury was well aware of Applicant's contention that he was alone with the victim for less than ten minutes.

This Court finds that counsel was not ineffective for failing to object to hearsay during Dr. Staples' testimony. Dr. Staples testified that victim "indicated to me that she had been touched by her aunt's boyfriend that was previously identified at triage as someone named Bryan. And I asked her if the aunt's boyfriend was Bryan and she told me yes." On appeal, the Court of Appeals found that even though there was no objection to Dr. Staples' testimony, his testimony was merely cumulative to other evidence and thus subject to harmless error analysis. This Court finds that counsel's failure to object did not amount to ineffective assistance of counsel because Dr. Staples' testimony did not reasonably affect the result of the trial.

Applicant alleged that counsel allowed a chaplain for Berkeley County to serve on the jury. The juror used to be a pastor at the victim's mother's church. The trial court asked the juror if he could be fair and impartial, and he replied in the affirmative. Out of an abundance of caution, counsel asked that the juror be excused but the trial court declined her request.

This Court finds that counsel was not ineffective for failing to call Applicant as a witness during the Jackson v. Denno hearing.  Applicant failed to indicate anything specific that his testimony could have provided to establish that his statements were not given freely and voluntarily. Therefore, this Court finds that the Applicant has failed to meet his burden of showing that the outcome of the trial would have been different if he had testified during the Jackson v. Denno hearing.

Accordingly, this Court finds Applicant has failed to prove the first prong of Strickland, specifically that counsel failed to render reasonably effective assistance' under prevailing professional norms. This Court also finds the Applicant has failed to prove the second prong of Strickland, specifically that he was prejudiced by counsel's performance. Applicant's complaints concerning counsel's performance are without merit and are denied and dismissed.

<u>All Other Allegations</u>

As to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any evidence regarding such allegations. Accordingly,

this Court finds the Applicant waived such allegations and failed to meet his burden of proof regarding them. Therefore, they are hereby denied and dismissed.

## CONCLUSION

Based on all the foregoing, this Court finds and concludes the Applicant has not established any constitutional violations or deprivations before or during his trial and sentencing proceedings.  Counsel was not deficient in any manner, nor was the Applicant prejudiced by counsel's representation. Therefore, this application for PCR must be denied and dismissed with prejudice.

This Court advises the Applicant that he must file a notice of intent to appeal within thirty (30) days from the receipt of written notice of entry of this Order to secure appropriate appellate review. His attention is also directed to Rules 203, 206, and 243 of the South Carolina Appellate Court Rules for the appropriate procedures to follow after notice of intent to appeal, has been timely served and filed.

App. 875-883. Appellate Defender Breen R. Stevens filed a Petition for Writ of Certiorari on

Petitioner's behalf, dated October 31, 2011. ECF No. 34-5. Therein, he presented the following

issues for review:

 I.   Whether the PCR court erred in finding Counsel was not ineffective for failing to object to hearsay testimony from a treating emergency room doctor regarding Child's identification of Petitioner in a sexual assault case where Child never testified?
 II.  Whether the PCR court erred in finding Counsel was not ineffective for failing to call Petitioner as a witness at the Jackson v. Denno hearing to suppress his written statement to police where Counsel admitted at the post-conviction hearing that she should have called Petitioner as a witness, and the information considered by the PCR court contained the conditions Petitioner was under when the inculpatory statement was made?

Id. at 4.  The South Carolina Court of Appeals denied the petition, and issued the Remittitur on

August 16, 2013. ECF Nos. 34-7, 39. This federal habeas Petition followed and was filed on

October 16, 2013. ECF No. 1.

  III.    Discussion

      A.  Federal Habeas Issues

Petitioner raises the following issues in his Federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE: I was denied the right to due process and right to a fair trial due to ineffective assistance of Trial Counsel. USCA 5th, 6th, and 14th amendments.
> Supporting Facts: [(a)] Trial Counsel was ineffective for failing to object to the hearsay testimony of the alleged victim which came in under the exception to hearsay (excited utterance); [(b)] Counsel failed to object to attending physicians' hearsay identification of petitioner and [(c)] Counsel was ineffective for failing to present petitioner as a witness at the Jackson-vs-Denno hearing. Petitioner reserved the right to amend this issue. ECF No. 1 at 5.

> GROUND TWO: I was denied the right to due process; right to a fair trial and right to a meaningful review.
> Supporting Facts: [(a)] Trial Counsel was ineffective for failing to properly argue the hearsay statement testimony; [(b)] the Court of Appeals, the PCR Court and the South Carolina Supreme Court [All] rendered a decision that is contrary to and an unreasonable application of clearly established Federal law as determined by the United States Supreme Court; and the Courts of South Carolina decisions resulted in an unreasonable determination of the facts in light of the evidence presented. *Id.* at 6.

### B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other

materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.  Habeas Corpus Standard of Review

1.     Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an

10

unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

a.   Deference to State Court Decisions

Courts afford deference to state courts' resolutions of the habeas claims of state prisoners. *See Bell v. Cone*, 543 U.S. 447, 455 (2005). Recently, the Supreme Court provided further guidance regarding the deference due to state-court decisions. *Harrington v. Richter*, 562 U.S. 86 (2011); *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011). To obtain habeas relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at _, 131 S. Ct. at 786-87. "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." 131 S. Ct. at 786. In *Harrington*, the Court further stated: "If this standard is difficult to meet, that is because it was meant to be." *Id.*; *see Richardson v. Branker*, 668 F.3d 128, 137-44 (4th Cir. 2012) (quoting *Harrington* extensively and reversing district court's grant of writ based on his ineffective assistance of counsel claims).

In interpreting § 2254(d)(1) and discussing the federal courts' role in reviewing legal determinations made by state courts, the United States Supreme Court held as follows:

> [A] federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . [clearly] established Federal law as determined by the Supreme Court of the United States," or (2) "involved an

11

> unreasonable application of . . . clearly established Federal law, as determined by
> the Supreme Court of the United States.

*Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (quoting from § 2254(d)(1)). "Clearly established Federal law in § 2254(d)(1) refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting *Williams*, 529 U.S. at 412). In considering whether a state-court decision is "contrary to" clearly established federal law, the federal court may not grant relief unless the state court arrived at a conclusion opposite to that reached by the Supreme Court on a legal question, the state court decided the case differently than the Court has on facts that are materially indistinguishable, or if the state court "identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams*, 529 U.S. 362, 405-13. The "unreasonable application" portion of § 2254(d)(1) "requires the state court decision to be more than incorrect or erroneous[,]" it "must be objectively unreasonable," which is a higher threshold. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citation omitted).

Section 2254(e)(1) requires the federal court give a presumption of correctness to state-court factual determinations and provides that a petitioner can only rebut such a presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Accordingly, a habeas petitioner is entitled to relief under § 2254(d)(2), only if he can prove, by clear and convincing evidence, that the state court unreasonably determined the facts in light of the evidence presented in state court.

### b.  Ineffective Assistance of Counsel

The Sixth Amendment provides a criminal defendant the right to effective assistance of counsel in a criminal trial and first appeal of right. In *Strickland v. Washington*, 466 U.S. 668

(1984), the Supreme Court announced a two-part test for adjudicating ineffective assistance of counsel claims. First, a petitioner must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Id*. at 687. Second, the petitioner must show that this deficiency prejudiced the defense. *Id*. at 694. The United States Supreme Court's 2011 decisions cited previously elaborate on the interplay between *Strickland* and § 2254, noting the standards are "both highly deferential," and "when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at _, 131 S. Ct at 788 (internal quotation marks omitted); *Pinholster*, 131 S. Ct. at 1403.

       Further, in *Pinholster*, the Court held for the first time that the federal court's habeas review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 131 S. Ct. at 1398. The Court explained that "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 1399. In the *Pinholster* case, the district court had conducted an evidentiary hearing and considered new evidence in connection with its review and granting of the petitioner's writ based on a finding of ineffective assistance of counsel. *Id*. at 1397. In an en banc decision, the Ninth Circuit Court of Appeals affirmed the district court's grant of the writ. *Id*. The United States Supreme Court granted certiorari and reversed the Ninth Circuit, finding that the district court should not have considered additional evidence that had not been available to the state courts. 131 S. Ct. at 1398. Because the federal habeas scheme "leaves primary responsibility with the state courts," and "requires that prisoners ordinarily must exhaust state remedies," the Court held that to permit new evidence to be presented in a federal habeas court "would be contrary to that purpose." 131 S. Ct. at 1399 (internal citation and quotation marks omitted).

When a petitioner raises in a § 2254 habeas petition an ineffective-assistance-of-counsel claim that was denied on the merits by a state court, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" not "whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 562 U.S. at _, 131 S. Ct. at 785. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" *Id*. (citing *Williams*, 529 U.S. at 410) (emphasis in original). "A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id*.

2.     Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. 28 U.S.C. § 2254(a)-(b). The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.     Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

14

(b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

        (A)    the applicant has exhausted the remedies available in the courts of the State; or

        (B)    (i) there is an absence of available State corrective process; or

              (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

     (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

     (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)     An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) *overruled on other grounds by U.S. v. Barnette*, 644 F.3d 192 (4th Cir. 2011). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d

767, 770 (S.C. 1976).  If the PCR court fails to address a claim as is required by section 17-27-80 of the South Carolina Code, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

b.       Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the

16

federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar.  As the United States Supreme Court explains:

> [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from

considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996)).

### 3.     Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### III.     Analysis

#### A.  Procedurally-Barred Grounds

As an initial matter, Respondent maintains that Petitioner's first argument in Ground One (a)—that he was denied effective assistance of counsel when trial counsel failed to object to the victim's alleged hearsay testimony that was admitted as an excited utterance—is barred from

habeas review. ECF No. 34 at 14-17. This claim was raised to the South Carolina Supreme Court in Petitioner's direct appeal and later in Petitioner's PCR hearing. However, Petitioner did not raise this argument in his PCR appeal. Respondent maintains that because Petitioner abandoned this argument in his PCR appeal that "he is barred from asserting this claim in the federal habeas setting as a Sixth Amendment ineffective assistance claim." *Id.* at 16.

Because Petitioner did not raise this portion of Ground One in his PCR appeal, he is procedurally barred from raising it in his habeas Petition. *See, e.g. Coleman v. Thompson,* 501 U.S. 722, 728-29 (1991) (issue not properly raised to the state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas); *Williams v. Warden*, No. 4:08-2312-SB, 2009 WL 3052487, at *13 (D.S.C. Sept. 23, 2009) (finding that because petitioner "did not properly present this claim to the state's highest court in a procedurally viable manner when he had the opportunity, and the state courts would find any attempt to raise the claim now to be procedurally improper, then the claim is procedurally barred from review in federal habeas corpus"). Moreover, this court may not address this Ground because the South Carolina Supreme Court resolved the issue on an independent state ground and not federal law. *Cf. Coleman v. Thompson*, 501 U.S. at 735 ("In habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition.").

As previously noted, the South Carolina Supreme Court found that the admission of the victim's hearsay statement was properly admitted under the excited utterance exception to

hearsay. ECF No. 34-3 at 11. The supreme court relied on Rule 803(2) of the South Carolina Rules of Evidence in rendering its decision. *See id.* Therefore, this portion of Ground One of the Petition is not cognizable under federal habeas review. The undersigned finds that this court is prohibited from granting habeas relief unless the state court's decision contradicts, or is an unreasonable application of, "clearly established Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Accordingly, the undersigned must agree with the state court's application of its own law to the facts of this case. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Therefore, this court cannot conclude that the South Carolina Supreme Court's determination on the issue was contrary to, or an unreasonable application of, clearly established federal law. *See e.g., Bustos v. White*, 521 F.3d 321, 325-26 (4th Cir. 2008) (holding that because there is no Supreme Court precedent establishing that parole ineligibility constitutes a direct, rather than a collateral, consequence of a guilty plea, there was no basis for determining that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law); *see also Virsnieks v. Smith*, 521 F.3d 707, 716 (7th Cir. 2008) (internal citation omitted) (stating that "there can be no Supreme Court precedent to be contradicted or unreasonably applied, and therefore no habeas relief, when there is no Supreme Court precedent on point or where the Court has reserved the question.").

Petitioner may, nonetheless, overcome procedural defaults and have his claims addressed on the merits, by showing either cause and prejudice for the default, or that a miscarriage of justice would result from the lack of such review. *See Coleman*, 501 U.S. at 750; *Savino v. Murray*, 82 F.3d 593, 602-03 (4th Cir. 1996). The existence of cause ordinarily turns upon a

showing of: 1) a denial of effective assistance of counsel, 2) a factor external to the defense which impeded compliance with the state procedural rule, or 3) the novelty of the claim. *Murray*, 477 U.S. at 488.  Having reviewed the record, evidence, and the parties' legal memoranda, the undersigned finds that Petitioner has not shown sufficient cause and prejudice to excuse the default of the above-referenced claim.  Thus, this issue is procedurally barred from consideration by this court and should be dismissed. *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (finding in order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different); *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into federal court.").

In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* (internal citation omitted). The court's review of the record does not support a showing of any cause and prejudice or actual innocence to excuse the default. Thus, his claim is procedurally barred from consideration by this court and should be dismissed. The undersigned therefore recommends that the Respondent's Motion for Summary Judgment be granted as to Ground One (a).[2]

---

[2] The Fourth Circuit has stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Accordingly, the undersigned will not discuss the merits of Ground One (a).

B. Merits

In Ground One (b) and Ground One (c) Petitioner alleges ineffective assistance of counsel. The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771 (1970). In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

1. Ineffective Assistance of Counsel-Physician Hearsay Identification of Petitioner (Ground One (b))

Petitioner maintains he received ineffective assistance of counsel because his trial counsel failed to object to the admission of alleged hearsay testimony from a physician. ECF No. 1 at 5. Respondent maintains that the PCR court reasonably applied the mandates of *Strickland* and this ruling should be given deference and latitude. ECF No. 34 at 17.

The PCR court indicated that the appellate court "found that even though there was no objection to Dr. Staples' testimony, his testimony was merely cumulative to other evidence and

thus subject to harmless error analysis." App. 881.[3] Additionally, The PCR court found that Petitioner's trial counsel was not ineffective and Petitioner was not prejudiced by trial counsel's failure to object to hearsay during Dr. Staples' testimony. App. 811. The PCR Court recognized that that Dr. Staples testified that the victim indicated that her aunt's boyfriend touched her and identified him as "Bryan." *Id.* However, the PCR court found that "Dr. Staples' testimony did not reasonably affect the result of trial." *Id.* Based on the testimony from the PCR transcript and the trial transcript, the undersigned finds that Petitioner cannot satisfy the *Strickland* test.

The undersigned finds that the state court's dismissal of Petitioner's claim of ineffective assistance of counsel was not an unreasonable application of federal law because Petitioner failed to show that had Dr. Staples' not testified about the victim's statement to him, that there is a reasonable probability that the result of his trial would have been different. Further, the undersigned notes that in addition to Dr. Staples, Marla Lynn Jackson testified that victim told her "Bryan did it," *see* App 183, and several witnesses, including Petitioner, place Petitioner alone with the victim on the night of the incident. Therefore, the admission of the physician's statement was cumulative to other evidence. Accordingly, the undersigned finds that Petitioner has failed to demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d) & (e)(1). As a result, the issue raised in Ground One (b) is without merit and should be dismissed.

2. Ineffective Assistance of Counsel-failing to present Petitioner as a witness at the *Jackson v. Denno* hearing (Ground One (c))

---

[3] In the Order of Dismissal the PCR Court referred to the South Carolina Court of Appeals' finding regarding Dr. Staples' testimony. However, the decision affirming Petitioner's conviction and this finding was made by the South Carolina Supreme Court. App. 798 n.8.

Petitioner contends that he was denied effective assistance of counsel because his trial counsel failed to present him as a witness during the *Jackson v. Denno* hearing. ECF No. 1 at 5. Respondent maintains that Petitioner's trial counsel was not ineffective for failing to call Petitioner as a witness, and Petitioner failed to meet his burden of showing that the outcome of his trial would have been different if he had testified during the *Jackson v. Denno* hearing. ECF No. 34 at 24-25.

The PCR court found that Petitioner's trial counsel was not ineffective and Petitioner was not prejudiced by trial counsel's failure to call Petitioner as a witness during the *Jackson v. Denno* hearing. App. 811. Specifically, the PCR court found:

> [C]ounsel was not ineffective for failing to call Applicant as a witness during the Jackson v. Denno hearing. Applicant failed to indicate anything specific that his testimony could have provided to establish that his statements were not given freely and voluntarily. Therefore, this Court finds that the Applicant has failed to meet his burden of showing that the outcome of the trial would have been different if he had testified during the Jackson v. Denno hearing.

*Id.* Based on the testimony from the PCR transcript and the trial transcript, the undersigned finds that the PCR court correctly applied *Strickland* to Petitioner's case.

In *Jackson v. Denno*, the Supreme Court instructs trial courts to "make a preliminary determination regarding a confession offered by the prosecution and exclude it if in no circumstances could the confession be deemed voluntary." 378 U.S. 368, 377 (1964). The Court based this mandate on a defendant's due process right to not be found guilty based in whole or in part "upon an involuntary confession" and defendant's right to object to the use of the confession. *Id.* 376-77. When determining whether a statement is involuntary, the Supreme Court further instructs that the test to consider is the "totality of all the surrounding the circumstances,"

including "the circumstances surrounding the giving of a confession," and "the characteristics of the accused and the details of the interrogation." *Dickerson v. United States*, 530 U.S. 428, 434; *see also United States v. Hunter*, 912 F. Supp. 2d 388, 394 (E.D. Va. 2012) ("Whether statements were unconstitutionally obtained is a mixed question of law and fact properly disposed of by the court, without the assistance of a jury, based on the totality of the circumstances.").

The Fourth Circuit has held that a "defendant may testify [during the pre-trial hearing] as to the confession, without prejudice to his privilege not to take the stand before the jury. *United States v. Owens*, 528 F.2d 1176, 1179 (4th Cir. 1975); *see also United States v. Inman*, 352 F.2d 954, 956 (4th Cir. 1965) ("On this voir dire the defendant may testify without prejudice to his privilege not to take the stand before the jury, but he may be examined or cross-examined only with regard to the origin and character of the confession, not upon his innocence or guilt."). Further, the *Owens* court held: "The defendant may be examined and cross-examined only with regard to the origin and character of the confession and not upon his innocence or guilt. The trial judge then determines whether the statement is admissible." *Id.* The *Inman* court further instructs a trial court to "evaluate the evidence to ascertain whether, after resolving any conflicts therein, it convinces him beyond a reasonable doubt that the confession was voluntary." 352 F.2d at 956. Additionally, "[u]nless the judge is so persuaded, the confession may not be admitted." *Id.*

During the PCR hearing, Petitioner's trial counsel testified that she made a mistake in failing to call Petitioner as a witness during the *Jackson v. Denno* hearing. App. 860. When questioned about the result of the *Jackson v. Denno* hearing, trial counsel responded: "The statements were admitted into evidence, and [I] will clearly state that I made a mistake in not

25

having him subject to examination during that hearing." *Id.* The state PCR court acknowledged that trial counsel thought "she made a mistake in failing to call [Petitioner] during the *Jackson v. Denno* hearing." App. 878. However, the PCR court found that trial counsel was not ineffective for this failure because Petitioner did not "indicate anything specific that his testimony could have provided to establish that his statements were not given freely and voluntarily." App. 881. Accordingly, the state PCR court found Petitioner failed to prove the first and second prongs of the *Strickland* test.

Based on Petitioner's PCR and trial testimony, the undersigned finds that the state court reasonably applied the *Strickland* standard. During the PCR hearing, Petitioner testified that "a lot of this was based on a coerced statement that was signed by me and a lot weighed on whether the statement was coerced or not." App. 837. Petitioner testified that when he was picked up for questioning that, "I was not clothed. I only had on a pair of sweat pants and was barefoot. He told me to get in the vehicle, and he went to drive off with the vehicle. I went to get out, he reached around, slammed the door, and took off with me in the vehicle, and he claims that none of that happened. . . ." App. 840. Petitioner testified that he was drinking that night and had smoked marijuana, which "goes to my state of mind when he was badgering me for the five hours that he did have me at the station, and I just finally wrote what was he was telling me to write, which is the coerced statement that I wrote that matches none of the physical evidence that was—of the injuries done to the child." App. 852. In addition to this testimony from the PCR hearing, during his criminal trial Petitioner thoroughly testified about his statements and the circumstances under which he made them. App. 559-86.

Petitioner's trial testimony is consistent, but more in-depth, with his PCR testimony. During the trial, Petitioner testified that on the night he was interrogated, officers came to his house at 3:00 a.m. while he was in bed. App. 557. When he came to the door, Petitioner testified that there were two officers there in uniform and an officer in "plain clothes." *Id.* Petitioner testified that the he retrieved his fiancée for the officers, and she went to Detective Bassi's car so that he could speak with her. App. 558. Petitioner testified he was taken to Detective Bassi's car, and once he got in, Detective Bassi asked Petitioner if he went trick-or-treating that night with the victim. App. 559. Petitioner testified that once he answered the question that Detective Bassi "started his car and said we were going to his office to speak about this." *Id.* Petitioner testified that he was wearing a pair of green sweat pants and no shirt or shoes at the time. 560. Furthermore, Petitioner testified that he "tried to get out of the vehicle at that time because I was going to get dressed. And he told me I didn't need clothes, just to get back in and stay where I was." *Id.*

Once they arrived at Detective Bassi's office, Petitioner testified that Bassi asked Petitioner if he would be willing to "write a voluntary statement on what happened that night just stating the facts that [he] had told [Bassi]." App. 561. Petitioner testified that Bassi did not inform Petitioner that he did not have to answer any of the questions, that he could have a lawyer, that if he could not afford a lawyer that one would be appointed, that he could call his family, that he could leave, or that he was under arrest.[4] Tr. 561-62. Rather, at this point, Petitioner testified he was told only that he was a witness who Bassi needed to talk with. App. 562.

---

[4] In other words, up until this point, according to Petitioner, he had not been read his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436, 461 (1966).

After going over the voluntary statement form[5] with Petitioner, Petitioner testified that Bassi again asked Petitioner to write a statement on what had happened that evening. App. 563. Petitioner testified that he complied. App. 563.[6] Upon review of Petitioner's statement, Petitioner testified that Bassi "got an attitude, said that he knew that those were not - - that was not what happened that evening, was pretty much upset with me, had a complete different demeanor about him, said that he wanted me to think about what I had written in the statement, that he knew that there were more injuries to that child. . . ." 564-65. Further, Petitioner testified that Bassi told him that "there was more done to this child and that [he] needed to come clean with [himself] and write a statement containing what had actually happened in that evening when [he] had the child. . . ." App. 565.

Petitioner testified that Bassi then gave him an "Interrogation Advice of Rights" form that he signed and initialed. App. 565. Petitioner testified that Bassi reviewed the advisement of rights form with him but did not tell him that he was in custody or under arrest. App. 566. Petitioner testified that after he signed the form, Bassi told Petitioner "to think about it," then left the room for 15 to 20 minutes. App. 567. When Bassi returned, Petitioner testified that Bassi again asked him what happened and Petitioner responded that it was all in the first statement. App. 567. Petitioner testified that Bassi then "got completely mad, sat back down at his desk,

_____

[5] The voluntary statement form contains a paragraph describing *Miranda* rights and waiver of those rights. App. 734.

[6] The "Voluntary Statement," dated November 1, 2003, with a time of 3:40 a.m., indicated the following: "On October 31st we went trick or treating with [Petitioner's fiancé, victim, and other children]. I dropped them off at Sterling Oaks and took [child] to my place to pick up Brandon. I took them to game and returned to trick or treat. [Victim] was crying so Jo had me take her home w/ [child]. I returned [victim] to Marla's and went to pick up the rest from trick or treating. We dropped of kids + went to pick up boys from game. Took them home then went to get food and went home." App. 734.

would huff and puff." *Id.* Petitioner testified that Bassi then instructed "you have to talk about this. You have to come clean. You know you'll feel much better when you do because I was - - at that point, I was telling him that's what happened and that's it." *Id.*

Petitioner testified that at this point Bassi pulled out pictures and stated that he had witnesses that said Petitioner did this. *Id.* Petitioner testified that Bassi continued to interrogate him and after about two hours at some point in time Petitioner changed the terms of his admission. App. 570. Petitioner testified that Bassi had "very much convinced [him] that [he] had done that to that child at that time that I had her. . . . he convinced [Petitioner] that [he] had done this to this child and that [he] had grabbed her and [he] had hurt her when she was with [Petitioner]." App. 571.

Petitioner testified that Bassi was more satisfied with his statement but said that "there was more that had happened that night that [Petitioner] still was not telling him. . . .[Bassi] told [Petitioner] that [he] had digitally penetrated this child and that she had been hurt. . . ." App. 572. Petitioner testified that he wrote the second statement because Bassi told him he could go home if he wrote out what they had agreed Petitioner had done. App. 572. Petitioner testified that at that point he wrote out a statement, Bassi reviewed it, and again said it was not enough—that Petitioner was not "saying everything that [he] needed to say to go home." App. 573. Petitioner testified that he "just wanted to go home," and Bassi "told [him] what's written in the parenthesis on the bottom, you can see it, on [his] statement." App. 573-74. Petitioner testified that he put parentheses around "my right hand and my finger slightly penetrated her," because he "wanted to make sure that anybody that saw this piece of paper later on would question those marks and know that that was not [his] words." App. 574.

Petitioner testified that Bassi was not satisfied with the statement once Petitioner handed it back to him. Petitioner testified that he added a statement that he "did this out of frustration and anger to make [victim] stop crying hysterically." App. 575. Petitioner testified that Bassi was satisfied with this version of his statement. App. 575. Petitioner testified that Bassi took him home around 6:00 or 7:00 in the morning after Petitioner had written out the statement. App. 577.

In full, Petitioner's second signed "Voluntary Statement," dated November 1, 2003, with a time of 5:55 a.m., indicated the following:

> October 31st I went to Sterling Oak to pick up Everyone from trick or treating, they weren't done but [victim] was tired and crying[.] So Joanne asked me to take her home. She put [victim] + [child] in the car. [Victim] was crying [hysterically] and from the front seat I grabbed her arm to get her to stop, she didn't so I grabbed her leg still trying to get her attention for her to stop. She kept crying and I pushed on her diaper in groin area[.] She still wouldn't stop so I pushed on her crotch w/ my finger. She stop[p]ed crying and was fine the rest of the way home. (It was my right hand and my finger slightly penitrated her)[.] I did this out of frustration + anger to make her stop crying [hysterically]."

App. 735.

On cross-examination, Petitioner testified that he willingly got in the car with Bassi. App. 589. Furthermore, he testified that he understood that he did not have to make any statement at all, had the right to remain silent, and had the right to have a lawyer present. App. 597; 601. Petitioner testified that he understood the rights that Bassi read to him. App. 597. Additionally, Petitioner testified that Bassi gave him an opportunity to change his statements on November 3, 2003, but he did not. App. 579-80; 605. Petitioner testified that Bassi offered him another piece of paper to make changes, but he declined the offer. App. 602.

Respondent and the PCR court maintain that Petitioner failed to offer testimony regarding coercion from investigating officers which resulted in his statements not being voluntary. The undersigned agrees because based upon a review of the PCR transcript and trial transcript, under some circumstance, the confession could be deemed voluntary pursuant to *Jackson v. Denno*, 378 U.S. at 377 (instructing confession should be excluded if in no circumstances it could be deemed voluntary). The test for determining whether a statement is involuntary under the Due Process Clause "is whether the defendant's will has been 'overborne' or his 'capacity for self-determination critically impaired." *United States v. Pelton,* 835 F.2d 1067, 1071-72 (4th Cir. 1987) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 225 (1973)). "To determine whether a defendant's will has been overborne or his capacity for self determination critically impaired, courts must consider the 'totality of the circumstances,' including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." *United States v. Cristobal*, 293 F.3d 134, 140 (4th Cir. 2002) (internal citation omitted).

"[C]oercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk that an individual will not be 'accorded his privilege under the Fifth Amendment . . . . not to be compelled to incriminate himself.'" *Dickerson v. United States*, 530 U.S. 428, 435 (2000). The test for voluntariness of a statement, outside of the context of a plea bargain, is whether the confession was "extracted by any sort of threats or violence, (or) obtained by any direct or implied promises, however slight, (or) by the exertion of any improper influence." *Hutto v. Ross*, 429 U.S. 28, 30 (1976) (*citing Bram v. United States*, 168 U.S. 532, 542-543 (1897)). "Once conversations lawfully begin, we believe a law enforcement officer may properly tell the truth to the accused, and we think it is a fact of

31

criminal life that accused persons can and often do help themselves by cooperating with the police." *United States v. Williams*, 479 F.2d 1138, 1140 (4th Cir. 1973). "[G]overnment agents may validly make some representations to a defendant or may discuss cooperation without rendering the resulting confession involuntary. Government agents may initiate conversations on cooperation, they may promise to make a defendant's cooperation known to the prosecutor, and they may even be able to make and breach certain promises without rendering a resulting confession involuntary." *United States v. Shears*, 762 F.2d 397, 401-02 (4th Cir. 1985). The Fourth Circuit has "consistently declined to hold categorically that a suspect's statements are involuntary simply because police deceptively highlight the positive aspects of confession." *United States v. Umana*, 750 F.3d 320, 344 (4th Cir. 2014); *see also United States v. Whitfield*, 695 F.3d 288, 303 n.8 (4th Cir. 2012) (internal quotations omitted) (finding a confession voluntary where the police officers told the suspect that by talking to them he would do nothing but help himself); *Rose v. Lee,* 252 F.3d 676, 686 (4th Cir. 2001) (holding vague promises that police would "go easier" on suspect if he confessed did not amount to unconstitutional coercion). However, "there are certain promises whose attraction renders a resulting confession involuntary if the promises are not kept, and the defendant's perception of what government agents have promised is an important factor in determining voluntariness." *Shears*, 762 F.2d at 402. As the Supreme Court held, "evidence of guilt induced from a person under a governmental promise of immunity, and where that is the case such evidence must be excluded under the Self-Incrimination Clause of the Fifth Amendment." *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 347 (1963). In *Grades v. Boles*, 398 F.2d 409, 412 (4th Cir. 1968), the Fourth Circuit held

that discussions possibly amounting to promises of leniency or a plea bargain must be viewed from the defendant's, not the prosecutor's, perspective.

Here, Bassi lawfully began a conversation with Petitioner. Specifically, Petitioner willingly spoke with Bassi, and prior to writing his incriminating statement, Bassi explained Petitioner's *Miranda* rights to him. Thereafter, Petitioner signed a form indicating he understood these constitutional rights and later testified he understood these rights. Based on the testimony presented, the undersigned does not find that Bassi made an express promise of immunity to Petitioner. In that regard, Petitioner testified that he understood he would have to appear before a judge and that he would only "get out on bond." App. 576. Furthermore, Petitioner testified that he understood Bassi would return to speak with him the following Monday. *Id.* Though Petitioner testified that he understood his *Miranda* rights, including his right to remain silent and right to not "make any statement at all," he nevertheless wrote two statements. Moreover, two days later Petitioner was given the opportunity to change his statement but chose not to alter it. Based on these facts, the undersigned does not find that Petitioner's will was 'overborne' or his 'capacity for self-determination critically impaired' when he wrote out the statements.

Based on the content of Petitioner's testimony concerning his interrogation, the undersigned does not find that trial counsel erred in failing to call him as a witness during the *Jackson v. Denno* hearing. Further, even if trial counsel erred in failing to call Petitioner as witness, the undersigned finds it to be harmless error. In other words, the undersigned finds that there is not a reasonable probability that, but for counsel's error, the result of the *Jackson v. Denno* hearing would have been different or that the circuit court would have found Petitioner's statement involuntary and excluded it from his trial. Therefore, the undersigned finds that there is

not a reasonable probability that the result of Petitioner's trial would have been different. However, the analysis before this court is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at _, 131 S.Ct at 785.

The undersigned finds that Petitioner has failed to demonstrate that the PCR court erred in finding his trial counsel was effective under *Strickland*. Furthermore, the undersigned does not find that the PCR court's legal analysis under *Strickland* was objectively unreasonable. Here, Petitioner has failed to show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at _, 131 S. Ct. at 786-87. Furthermore, the undersigned does not find that the state court unreasonably applied a governing legal principle or made an unreasonable determination of the facts in light of the evidence pursuant to § 2254(d)(1). As a result, the issues raised in Ground One (c) are without merit and should be dismissed.

   3.  Ground Two: (a) Ineffective Assistance of Counsel for Failing to Argue Against Hearsay Statement; (b) South Carolina Courts Rendered Decisions that were Contrary to and an Unreasonable Application of Federal Law

In Ground Two (a), Petitioner maintains that his trial counsel was ineffective "for failing to properly argue the hearsay statement testimony." ECF No. 1 at 6. The undersigned addressed Ground Two (a) above in sections "A. Procedurally-Barred Grounds" and "1. Ineffective Assistance of Counsel-Physician Hearsay Identification of Petitioner (Ground One (b))." *See supra* at 18-21; 22-23. Additionally, Petitioner maintains that the South Carolina "Court of Appeals, the PCR Court and the South Carolina Supreme Court [All] rendered a decision that is contrary to and an unreasonable application of clearly established Federal Law as determined by

34

the United States Supreme Court; and the Courts of South Carolina decisions resulted in an unreasonable determination of the facts in light of the evidence presented." ECF No. 1 at 6. The undersigned previously addressed Ground 2 (b) in sections A and 1 above as well as section "2. Ineffective Assistance of Counsel; Failing to Present Petitioner as a Witness at the *Jackson v. Denno* hearing (Ground One (c))." *See supra* at 18-21; 22-23; 23-34. Accordingly, the undersigned has already thoroughly addressed these issues and recommends dismissing Grounds 2(a) and (b) for reasons mentioned above.

IV.    Conclusion and Recommendation

Wherefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 35, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

January 26, 2015
Florence, South Carolina

Kaymani D. West
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**